Merrimack
No. 79-226

## Susan Scarborough

v.

## R.T.P. Enterprises, Inc.

November 13, 1980

*McSwiney, Jones & Semple,* of Concord (*Robert E. Bowers, Jr.,* orally), for the plaintiff.

*Gregory H. Smith,* acting attorney general, and *Andrew R. Grainger,* assistant attorney general (*Mr. Grainger* orally), for the State.

*Frederic T. Greenhalge,* of Concord, by brief and orally, for the defendant.

DOUGLAS, J.   This case is before us for the second time. We originally heard it as an appeal from an order of the New Hampshire Commission for Human Rights which awarded Susan Scarborough $2,500 based on a ruling that the defendant, Robert Arnold, had discriminated against her on the basis of sex. At that time we remanded the case to the commission to make specific findings of fact to enable us to evaluate the decision and support its $2,500 award. *Scarborough v. Arnold,* 117 N.H. 803, 809, 379 A.2d 790, 794 (1977) (*"Scarborough I"*).

On May 26, 1978, the commission issued a new seven-page decision in which it set forth in detail the findings upon which it based its conclusion of discrimination by the defendant and noted that it would schedule an evidentiary hearing on the issue of damages. The defendant filed a petition for judicial review under RSA 354-A:10, charging bias in the commission's decision. He also filed a petition to enjoin the hearing on damages, which the Superior Court (*DiClerico,* J.) denied.

The commission scheduled a hearing on the issue of damages on July 28, 1978, and the defendant was summoned by subpoena duces tecum. At the time of the hearing, the defendant filed motions to continue for lack of jurisdiction and to transfer the case to the United States Equal Employment Opportunity Commission (E.E.O.C.). When the commission denied those motions, Arnold left the hearing room. The plaintiff filed a motion for contempt, which the commission denied. In Arnold's absence, the commission held the hearing and awarded Scarborough $3,321.91 in damages and interest.

Arnold then filed a motion to amend his petition for judicial

review, and later excepted to the denial of a hearing on the merits before the superior court, denial of his request for testimony of the executive director of the commission, and denial of his request to examine the commission's files. Scarborough filed a contempt motion against the defendant in superior court which *Souter,* J., denied. *DiClerico,* J., reserved all exceptions by both parties before the commission on human rights and the superior court and transferred them to this court.

The issues as framed by the parties are: (1) whether the record supports the May 26, 1978, findings of the commission on human rights; (2) whether our prior remand enabled the commission to take additional evidence on the issue of damages; (3) whether the superior court erred in refusing to allow the defendant to depose the executive director of the commission and to examine the commission's files to show bias; and (4) whether a party who appears at a commission hearing under a subpoena is in contempt of court by leaving before he gives testimony and evidence. We affirm the rulings below with the exception of the increase in damages.

■    First, we address the question of the commission's power to hold an additional hearing on remand. Although perfection of an appeal may divest the agency of jurisdiction with respect to issues on appeal, *see Rautenberg v. Munnis,* 107 N.H. 446, 447, 224 A.2d 232, 233 (1966), when a case is remanded by this court it means that the case is returned to the administrative agency to take further action in accordance with the opinion of the court. In *Scarborough I* a majority of this court remanded the case to the commission "for findings in accordance with this opinion." *Scarborough,* 117 N.H. at 811, 379 A.2d at 795. That remand related only to the *basis* for the damage award, and this court is unanimous that it was not intended to reopen the issue of the *amount* of damages. The commission therefore exceeded the scope of the remand by holding a hearing on the amount of damages, but its fifteen findings and conclusions derived from the original record clarify its reasoning and the original basis for its conclusion of discrimination and an award of damages.

■    The next issue is whether the commission's findings are supported by the record. The defendant argues that the United States Supreme Court decisions in *Furnco Construction Corp. v. Waters,* 438 U.S. 567 (1978), and *Board of Trustees v. Sweeney,* 439 U.S. 24 (1978), decided after our original decision in this case, should affect the way this court evaluates the commission's finding

of employment discrimination. *Furnco* and *Sweeney* have no bearing on this case; they dealt with the burden of proof that shifts to an employer after a plaintiff has made a prima facie showing of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Read together, those two cases do not alter the holding in *McDonnell Douglas* but only make it clear that the plaintiff carries the ultimate burden of proving discrimination, including proving that the employer's articulated non-discriminatory reason for his decision is a pretext.

■ In *Scarborough I* we noted that the commission had made no finding on whether the plaintiff had met her burden of proving pretext. *Scarborough,* 117 N.H. at 808, 379 A.2d at 793. In its second decision, dated May 26, 1978, the commission adequately addressed that issue. It specifically found that "there were no bona fide occupational qualifications for the position of management trainee." Decision of the Commission, at 5. The commission based its finding on evidence in the record that neither Arnold nor his employees mentioned any occupational requirements in the newspaper advertisement or over the telephone. Combined with evidence that Arnold had never hired a woman as a management trainee and that he or his employees responded to two telephone inquiries with the statement that women were not being considered for the management trainee position, the facts are sufficient to support the commission's finding that the requirement of grill experience was merely a pretext. The defendant's evidence does not establish by a clear preponderance that the commission's decision was unjust or unreasonable or that it contained an error of law. *See* RSA 541:13.

The defendant next argues that the plaintiff did not meet the *McDonnell Douglas* requirements for a prima facie showing of discrimination because she did not give the defendant an opportunity to reject her and could not prove that he sought applicants with her qualifications after her rejection. That argument is without merit. The *McDonnell Douglas* four-pronged test was not meant to be an inflexible rule. *Teamsters v. United States,* 431 U.S. 324, 358 (1977). The Supreme Court held that prima facie proof of discrimination would vary according to the facts of each situation. *McDonnell Douglas,* 441 U.S. at 802 n.13.

■ As noted in *Scarborough I,* the plaintiff may prove a violation of RSA 354-A:8 I by showing either a discriminatory refusal to hire or a failure to fairly consider her because of her sex. *Scarborough,* 117 N.H. at 807, 379 A.2d at 792–93. In a refusal

to hire case, proof of actual rejection is not required. In a similar case the Supreme Court noted, "[t]he effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity." *Teamsters*, 431 U.S. at 365. A charge that an employer failed to give equal consideration to an applicant would never require the applicant to wait until she is formally rejected because the offense is complete before that time. The only effect of an applicant's failure to wait for a formal rejection is that it makes her case more difficult to prove. *Cf. id.* at 367.

Now we turn to the defendant's final argument. In *Scarborough I* we held "[i]n the absence of any showing of actual prejudice or bias by the defendant, we cannot say that the procedures of RSA ch. 354-A represent a deprivation of due process." *Scarborough*, 117 N.H. at 810, 379 A.2d at 794. The defendant argues that the superior court erred in denying him the opportunity to depose the executive director of the commission and to examine the commission's files in order to discover whether there was actual bias in the proceedings. The defendant can point to no specific instances of bias, but argues that because the E.E.O.C. had issued a determination of probable cause in March of 1978 the commission must have been influenced by that agency. That argument misunderstands the function of the E.E.O.C., *see* M. Coyle, *Sex Discrimination in Employment: The Procedural and Evidentiary Aspects of Title VII Litigation*, 19 N.H.B.J. 365, 367–69 (1978), and does not overcome the "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Although discovery rules are to be given a broad and liberal interpretation, *see Robbins v. Kalwall Corp.*, 120 N.H. 451, 417 A.2d 4 (1980), the trial court has discretion to determine the limits of discovery, *see Hartford v. Cutter*, 108 N.H. 112, 115, 229 A.2d 173, 176 (1967). Because the defendant has not made any actual allegations of bias, the information sought does not appear "reasonably calculated to lead to the discovery of admissible evidence." Superior Court Rule 35.b(1). The superior court was well within its discretion in refusing to allow the defendant's discovery requests.

The only issue raised by the plaintiff Scarborough is whether Arnold, who was summoned to a hearing before the commission by a subpoena, was in contempt of court for leaving the hearing. Because the contempt power is discretionary, *see Wright v. Wright*, 119 N.H. 102, 103, 398 A.2d 837, 838 (1979), we note that the

proper inquiry is not whether we would have found the defendant in contempt but whether the superior court clearly abused its discretion in refusing to do so. *Cf. State v. Boisvert*, 119 N.H. 174, 178, 400 A.2d 48, 51 (1979); *Eichel v. Payeur*, 107 N.H. 194, 196, 219 A.2d 287, 288 (1966). We hold that it did not.

■ The commission on human rights does not have the power to punish for contempt. RSA 354-A:7 VII. A petition for contempt must be filed in the superior court, RSA 491:19, and the judge has the power to proceed as though the original matter had been before him. RSA 491:20. There are two types of contempt, distinguishable according to purpose: civil contempt, where the purpose is remedial and for the benefit of the plaintiff, and criminal contempt, where the purpose is punitive and to preserve the authority and dignity of the court. *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 285, 385 A.2d 851, 853–54 (1978). In this case the plaintiff filed the motion for contempt with the superior court on October 16, 1978. Any purpose to be served in a contempt finding at that time would have been punitive rather than remedial because the commission already had held a hearing on the issue of damages without the defendant and had made an award to the plaintiff. *Scarborough* did not seek another hearing. Because the contempt proceeding would have been criminal and punitive, the plaintiff's interest was limited and the court's discretion was greater. *See generally id.*; 17 AM. JUR. 2d *Contempt* § 4 (1964). We cannot find that the court abused its discretion in refusing to punish the defendant, but such conduct in another context might well require action to insure the integrity of the administrative process.

*Judgment for plaintiff in the amount of $2,500.00.*

GRIMES, C.J., and BOIS, J., concurred specially; the others concurred.

GRIMES, C.J., and BOIS, J., concurring specially:

Although we adhere to our dissent in *Scarborough I*, we are bound by the majority opinion in that case and therefore concur in this opinion.