Hillsborough
No. 84-443

### The State of New Hampshire

v.

### James O'Flynn

July 1, 1985

*Stephen E. Merrill*, attorney general (*Peter W. Mosseau*, deputy attorney general, and *Edna M. Conway*, assistant attorney general, on the brief, and *Mr. Mosseau* orally), for the State.

*Spaloss and Rosson*, of Nashua (*Henry F. Spaloss* on the brief and orally), for the defendant.

BATCHELDER, J.   The defendant, James O'Flynn, was convicted in a jury-waived trial of extorting campaign contributions from two of his deputies and one deputy applicant in the defendant's bid for re-election as Hillsborough County Sheriff. *See* RSA 637:5; *cf.* RSA 640:1 (excludes the mere giving or receiving of campaign contributions from coverage of RSA chapter 640, dealing with corrupt practices). For each of the three instances, evidence was presented that the defendant extorted the contributions by threatening not to appoint the victim to a full-time deputy position. The amount of money verified at trial to have been obtained from each victim was less than $500, but more than $500 when the contributions were considered together. Finding that the three extortion offenses "were committed pursuant to one scheme or course of conduct," the Superior Court (*Temple*, J.) aggregated the offenses to a class B felony offense under RSA 637:2, V(a). *See* RSA 637:11, II(a) (Supp. 1983). On appeal, the defendant challenges the sufficiency of the evidence. We affirm.

In considering the defendant's claim, we view the evidence in the light most favorable to the State. *See State v. Martin*, 121 N.H. 1032, 1034, 437 A.2d 308, 309 (1981). We will uphold the verdict unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *State v. Danskin*, 122 N.H. 817, 818, 451 A.2d 396, 397 (1982) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

At trial, the prosecution presented testimony of nine men who had served as deputies under the defendant. Transactions between the defendant and three of these deputies—Lefebvre, Riccitelli, and Holston—were the basis of the defendant's conviction. These three consistently testified that the defendant expressly and impliedly indicated that their job security depended on their making contributions to the defendant's reelection campaign.

Lefebvre, a full-time deputy, testified that, after voluntarily contributing $50 to the campaign, he was approached by the defendant for an additional $100. According to Lefebvre, the defendant "told me that he was fighting for his political life; there was a lot of qualified deputies out there; he wasn't going to favor someone who didn't support him . . . . He said, 'Those who support me will be with me in November. Those who don't won't.'" Lefebvre further testified that, after further solicitations, he tendered a check for $100, that he had felt coerced into making the payment, and that it had been made involuntarily.

Riccitelli joined the sheriff's office as a part-time deputy during the campaign. Riccitelli testified that at the job interview he expressed an interest in obtaining a full-time position. According to Riccitelli, the defendant stated that there would be only one such opening, that three or four deputies were competing for the position, and that "[w]hoever gave him the most money would get the job." Riccitelli testified that he had appreciated the defendant's frankness: ". . . that night when I got home and told everyone I got hired, I gave the guy credit. He was right up front about it, that I was going to have to pay for my job if I wanted it . . . ." Riccitelli testified that the defendant solicited $2,000 to $3,000 from him, using as incentives both the carrot of a full-time position and the stick of fewer part-time assignments. Verified contributions of $400 by Riccitelli supported the conviction.

Holston interviewed with the defendant during the campaign for a full-time position. He testified that the defendant informed him at the job interview that the defendant "was requiring or asking all the deputies working there for a $100 donation," and that appointment to a full-time position depended on contributing to the defendant's campaign. According to Holston, the defendant "said he couldn't guarantee that the position would be available, but he said the more that I put into it or the more that I support or did for him, the better off that I would be in getting that position." Holston testified that he subsequently paid the defendant $100 in two $50 cash installments and that he believed that contributing to the campaign was a prerequisite to obtaining a full-time position.

The credibility of the testimony of Lefebvre, Riccitelli, and Holston was bolstered by the testimony of five other officers with the sheriff's department. Deputy Hardy testified that the defendant in soliciting campaign funds from him stated, "Your overtime could be shut off like a faucet." Deputy Lunden testified that the defendant had indicated to him that the extent of Lunden's support in the campaign would influence Lunden's professional future with the sheriff's office. Captain Place testified that the defendant assigned

part-time work on the basis of who contributed to the campaign. Deputy Thomas testified that a conversation with the defendant had left him with the impression that his contributions to the campaign would determine his work assignments from the defendant. And Deputy Baber testified that the defendant had informed him that his future with the sheriff's office might depend on whether he contributed to the campaign.

At common law, extortion "consist[ed] of the corrupt taking of a fee by a public officer, under color of his office, where no fee is due, or not so large a fee is due, or the fee is not yet due." W. LaFave and A. Scott, Handbook on Criminal Law § 95, at 704 (1972); *see also Fox v. Whitney*, 33 N.H. 516, 517 (1856) (construing extortion statute which adopted common law rule). Under RSA 637:5, the crime of extortion has been broadened to include unlawful acquisitions of property by means of threats. The defendant was convicted under RSA 637:5, II(g), which provides, "extortion occurs when a person threatens to . . . [t]ake action as an official against anyone or anything, or withhold official action, or cause such action or withholding." The defendant argues that the evidence was legally insufficient to establish that he threatened the deputies, that official action was the threatened conduct, or that the instances of extortion were part of a single course of conduct and thus aggregable under RSA 637:2, V(a). We disagree.

■■■ The testimony recounted above established that the defendant repeatedly indicated that the selection of deputies for full-time assignments in the fall would hinge on who contributed to the campaign, and that Lefebvre, Riccitelli, and Holston contributed to the campaign due to their belief that they would be denied such positions if they failed to contribute. The extraction of money from a subordinate under a threat of a promotion denial has been held to be extortionate. *Commonwealth v. Tiberi*, 239 Pa. Super. 152, 156, 161–62, 361 A.2d 318, 320, 322–23 (1976). To be extortionate, a threat need not be express; it may be implied in words or conduct. *See Commonwealth v. Bellis*, 472 A.2d 194, 205 (Pa. 1984) (stating that the threat requirement distinguishes the crime of extortion from that of bribery); Model Penal Code § 223.4 comment 2(a) (Official Draft 1980). The record reveals sufficient evidence to have warranted the court's finding beyond a reasonable doubt that the defendant threatened Lefebvre, Riccitelli, and Holston with a denial of a permanent position in exacting campaign contributions from them. We therefore find the evidence sufficient in this respect.

■■■ The defendant's second challenge to the verdict is that the actions with which he threatened the victims were not official

actions. This argument is without merit. Under RSA 104:3, sheriffs are charged with the responsibility of appointing their deputies. To threaten to deny the victims deputy appointments was thus to threaten to "withhold official action" on their employment applications. RSA 637:5, II(g).

Under RSA 637:2, V(a), "[a]mounts involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense."

■■ The defendant's final challenge to the verdict is that the court erred in aggregating the three offenses of extortion under this section because the evidence did not sufficiently establish "one scheme or course of conduct." We disagree. Each of the three instances of extortion occurred in essentially identical situations: the professional relationships between the defendant and the victims were the same; the threat to deny the victim a full-time appointment was used in each case; and the funds that were extorted were in each case to be spent on the defendant's reelection campaign. "[S]everal acts may constitute one crime if impelled by one intent." *State v. Sampson*, 120 N.H. 251, 256, 413 A.2d 590, 592 (1980). We find that the evidence supports the conclusion that the three instances of extortion were actuated by the same intent, and we therefore uphold the aggregation of the offenses.

■ In conclusion, we note that this action was timely brought. Since the three offenses were properly aggregable to a class B felony under RSA 637:2, V(a), this action was governed by the six-year limitations period of RSA 625:8, I(b). The State instituted the prosecution of this case well before the expiration of the limitations period.

*Affirmed.*

All concurred.