Hillsborough-northern judicial district
No. 2008-371

THE STATE OF NEW HAMPSHIRE

v.

DANIEL P. HYNES

Argued: March 12, 2009
Opinion Issued: August 5, 2009

*Kelly A. Ayotte*, attorney general (*Elizabeth J. Baker*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Daniel P. Hynes, appeals his conviction after a jury trial in Superior Court (*Barry*, J.) of one count of theft by extortion. *See* RSA 637:5, II(i) (2007). We affirm.

*I. Background*

The jury could have found the following facts. The defendant is an attorney who was admitted to the New Hampshire and Massachusetts Bars in 2006. In December of that year, he sent a "Cease and Desist/Demand Letter" to Claudia Lambert, the owner of Claudia's Signature Salon in Concord (the salon). The letter, written on "Daniel P. Hynes Esq." letterhead and noting his admission to the New Hampshire Bar, stated:

> I am writing in regards to your company's policy of pricing for different types of haircuts. It has been brought to my attention that your business charges $25 for haircuts but $18 for a Men's cut and $12 for a children [*sic*] haircut. Such a distinction in price based on gender and age is discrimination in violation of the law. Accordingly, I demand you immediately cease this unfair pricing and charge customers in a more appropriate manner, such as by the length of their hair or the amount of time it would take.

The letter claimed that the salon's practice was both unlawfully discriminatory in violation of RSA 354-A:17 (2009), and constituted an unfair trade practice in violation of RSA chapter 358-A (2009). The letter went on to state:

> I demand that you immediately cease your unlawful practice of charging for haircuts based upon age and gender. Should you not comply I will be forced to file a complaint with the State Commission for Human Rights while reserving all rights to remove and file in Superior Court. In addition, I demand payment in the amount of $1000 in order to avoid litigation . . . . I believe $1000 is a fair amount as it is the minimum that would be awarded

for an unfair trade practice alone. You have ten (10) days to comply . . . . Should you fail to comply additional steps will be taken including filing with the State Commission for Human Rights and potential removal to Superior Court. If such action is necessary I will seek all remedies available including but not limited to an injunction, damages for discrimination, damages for the unfair trade practice, ill-gotten gains, punitive damages, attorney fees and costs. If you object or otherwise wish to discuss the above matter you may have your attorney contact me.

The letter was signed "Daniel P. Hynes Esq."

At some point after receiving the letter, Lambert's husband, Bernard Nardi, called the defendant to see if they could "work out a settlement." During the ensuing conversation, the defendant indicated he was not a client of the salon and had found it, along with its prices, on the Internet. Nardi offered, and the defendant accepted, $500 to settle the matter. The defendant then prepared settlement documents reflecting the agreement, which he faxed to Nardi's real estate business office. The documents indicated that, in consideration of five hundred dollars received, the defendant would discharge the salon from any claims and demands regarding its alleged discriminatory practice. A meeting was scheduled to execute the documents.

Nardi subsequently contacted the New Hampshire Attorney General's Office, and it was determined that an investigator would attend the settlement meeting posing as Lambert's business partner. At the settlement meeting, the defendant again stated that he did not have a client. He further indicated that he, personally, would keep the $500 he received from Nardi, and that he was currently in negotiations with other attorneys in response to similar letters he had sent out. The investigator executed the settlement agreement, providing $500 to the defendant. After taking possession of the $500, the defendant was arrested and charged with theft by extortion. *See* RSA 637:5, II(i).

Prior to trial, the defendant moved to dismiss, arguing that his conduct is not prohibited by RSA 637:5, II(i), and, even if it is, the statute is unconstitutional. The trial court denied the motion, and the defendant was subsequently convicted. This appeal followed.

On appeal, the defendant argues that RSA 637:5, II(i) does not prohibit his conduct, either because it does not include a threat to sue, or because he stood to substantially benefit from the threatened conduct. In the alternative, he asserts that RSA 637:5, II(i) is unconstitutionally vague and overbroad. Finally, he argues that the trial court improperly instructed the jury. We address each argument in turn.

RSA 637:5, I (2007) provides: "A person is guilty of theft as he obtains or exercises control over the property of another by extortion and with a purpose to deprive him thereof." The statute provides eight specific circumstances in which extortion occurs, as well as a catch-all provision, under which the State charged the defendant. RSA 637:5, II(a)-(i). The catch-all provision states that extortion occurs when a person threatens to "[d]o any other act which would not in itself substantially benefit him but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships." RSA 637:5, II(i).

The defendant argues that RSA 637:5, II does not prohibit his conduct because none of its eight specific provisions includes a threat to file a lawsuit. In addition, he asserts that the term "substantially benefit" encompasses the kind of non-pecuniary satisfaction he would receive by ending the salon's alleged discrimination, and that this provision was satisfied by his standing to bring suit against the salon under RSA chapter 354-A (2009).

Resolution of this issue requires that we interpret RSA 637:5, II(i), which presents a question of law that we review *de novo. State v. Gallagher*, 157 N.H. 421, 423 (2008). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.* at 422. We first examine the language of the statute, and, where possible, we apply the plain and ordinary meaning to the words used. *Id.* at 422-23. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include. *State v. Langill*, 157 N.H. 77, 84 (2008). Further, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

The defendant first asserts that we should interpret RSA 637:5, II(i) as excluding any threat to sue, regardless of whether there is a basis for the threatened suit, because it does not constitute the type of harm contemplated by the statute. In support of this assertion, he argues that this type of threat falls outside the core purpose of the extortion statute, and that including a threat to sue in the statute would chill the right of access to the courts. The defendant also argues that the rule of lenity supports his interpretation. We disagree.

At common law, "extortion consisted of the corrupt taking of a fee by a public officer, under color of his office, where no fee is due, or not so large a fee is due, or the fee is not yet due." *State v. O'Flynn*, 126 N.H. 706, 709 (1985) (quotation and brackets omitted). "Beginning in the 19th century,

many states enacted extortion statutes to criminalize conduct that was extortionate but did not fall within the ambit of the narrow crime of common law extortion." *Rendelman v. State*, 927 A.2d 468, 474 (Md. Ct. Spec. App. 2007), *aff'd*, 947 A.2d 546 (Md. 2008). This statutory form of extortion applied to both private individuals and public officials, and made criminal "the act or practice of obtaining something or compelling some action by illegal means, as by force or coercion." *Id.* (quotations and brackets omitted). In New Hampshire, the legislature has enlarged the scope of extortion to include "unlawful acquisitions of property by means of threats," *O'Flynn*, 126 N.H. at 709; *see* RSA 637:5, II (2007).

■ Here, the defendant suggests that a threat to sue is inconsistent with the purpose of the statute in part because the "threat of civil litigation . . . does not give rise to the kind of intimidation that constitutes extortion." While we agree that simply threatening to institute a lawsuit does not, standing alone, carry the inherent hallmarks of an extortionate act, our inquiry does not end there. Unlike the other provisions within RSA 637:5, II, the plain language of RSA 637:5, II(i) does not simply evaluate the type of threat that was made; that is, the substance of the threat. Rather, it requires us to consider both the threat's potential harm to the person threatened as well as its potential benefit to the person making the threat. Thus, contrary to the defendant's interpretation, we cannot simply evaluate the threat on its face and disregard the circumstances under which it was made. In order to make a proper determination as to these additional factors, we must consider all of the circumstances surrounding that threat on a case-by-case basis. We, therefore, cannot conclude, as a matter of law, that there are *no* circumstances under which a threat to sue would constitute extortion.

We recognize that several courts have drawn a contrary conclusion, finding that a threat to sue, even if baseless, does not constitute extortion. *See United States v. Pendergraft*, 297 F.3d 1198, 1207-08 (11th Cir. 2002); *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984); *Rendelman*, 927 A.2d at 483. The focus in the majority of these cases is whether the threat constitutes a wrongful means to achieve a wrongful objective, as defined by the Hobbs Act, 18 U.S.C. § 1951 (2000). *See, e.g., Pendergraft*, 297 F.3d at 1205-06. For example, in *Rendelman*, the court stated:

> A wrongful purpose does not necessarily make the means threatened to accomplish it wrongful. The means threatened must be of a sort that will instill fear . . . . The threat of litigation, being a

lawful means in which a third party assigned by government to decide disputes will decide that very dispute, is not such a means.

*Rendelman*, 927 A.2d at 482. Similarly, in *I.S. Joseph Co.*, the United States Court of Appeals for the Eighth Circuit noted that "only the most liberal construction of the word 'fear' in the extortion statute could make it apply to" the threat to file a civil action. *I.S. Joseph Co.*, 751 F.2d at 267.

However, we find these cases distinguishable, because the courts' analyses considered the wrongful means — the threat — independent from the wrongful objective — the taking of property. As such, the type of threat made is a determinative factor. RSA 637:5, II(i) does not make such a distinction. Rather, as discussed above, it more broadly considers the consequences of the threat, both to the person making it and to its intended recipient. Furthermore, RSA 637:5, II(i) does not require there to be fear as a result of the threat, but, rather, only that there be substantial harm. We do not believe that these terms are interchangeable.

Further supporting our interpretation, other courts have held that an extortion conviction may be supported by the threat to bring a civil suit. The United States Court of Appeals for the First Circuit has indicated that, under federal law, an extortion charge may be based upon the threat of litigation if there is no basis for the threatened suit. *See United States v. Sturm*, 870 F.2d 769, 774 (1st Cir. 1989) ("It would be unjust to convict A of extortion unless she knew she had no claim to the property that she allegedly sought to extort."). Additionally, in construing a statute almost identical to RSA 637:5, II(i), a New Jersey court upheld a conviction for theft by extortion based upon a demand for money coupled with a threat to sue. *See State v. Roth*, 673 A.2d 285, 290-91 (N.J. Super. Ct. App. Div.), *cert. denied*, 679 A.2d 655 (N.J. 1996).

We also disagree with the defendant's contention that this interpretation chills an individual's right of access to the courts. By no means does our holding imply that every demand for money, buttressed by a threat to sue, constitutes extortion. Rather, we are simply denying the defendant's contention that a threat to sue may *never* constitute extortion. Moreover, we decline to apply the rule of lenity in support of the defendant's interpretation. The rule of lenity "forbids interpretation of a federal statute so as to increase the statutory penalty" when legislative intent is unclear and "is applicable only where statutory ambiguity has been found." *State v. Ravell*, 155 N.H. 280, 284 (2007) (quotation omitted). The statute at issue does not seek to increase a statutory penalty, and we have not found it ambiguous.

The defendant next argues that RSA 637:5, II(i) does not cover his conduct because he stood to "substantially benefit" from his actions. He argues that the term "benefit" is not limited to tangible interests, but "encompasses advantages to the sense of well-being," including his "satisfaction in eliminating an instance of gender-based price discrimination." We disagree.

■ Under the defendant's interpretation of "benefit," the extortion statute could be circumvented by any social injustice or generalized concern, regardless of how attenuated the connection between it and the defendant or whether he had sustained some actual injury to support the claim. In essence, any perceived bias would be sufficient to evade a charge of extortion. We do not believe the legislature intended such a result. We agree with the trial court that the phrase "substantially benefit" is not so broad as to encompass "an altruistic sense of accomplishment for ridding the world of a perceived injustice." Indeed, as *Roth* explained, this type of conceptual interpretation "is far too abstract to constitute a substantial benefit under this statute; it bespeaks of a societal goal, not personal gain. Allowing such a tenuous advantage to fulfill the substantial benefit requirement would simply eviscerate the statute." *Roth*, 673 A.2d at 288-89. We agree and similarly conclude that the defendant's asserted general interest in ending discrimination is insufficient to satisfy the "substantially benefit" element.

The defendant next argues that his standing to pursue a lawsuit under RSA chapter 354-A removed him from the ambit of RSA 637:5, II(i) by "substantially benefit[ting]" him. The dissent agrees in part, concluding that the defendant had a good faith basis to believe that the threatened action had merit. We disagree with both contentions.

We begin by noting that the defendant threatened the salon with a claim under the Consumer Protection Act (CPA), RSA chapter 358-A, demanding "$1000 in order to avoid litigation" because "$1000 is a fair amount as it is the minimum that would be awarded for an unfair trade practice alone." Even assuming that the defendant marshaled a good faith argument that the salon was engaging in a prohibited act, he fails to explain exactly how his threatened CPA claim fits within the statutory language conferring private-party standing upon only those "*injured* by another's use of any method, act or practice declared unlawful." RSA 358-A:10, I (emphasis added); *see, e.g., Remsburg v. Docusearch*, 149 N.H. 148, 160 (2003) (holding that person deceived by investigator proper party to bring suit under CPA, notwithstanding lack of privity with investigator). Although the CPA formed the basis for the defendant's demand of $1000, and although he maintained at trial that he had standing under the CPA, he no longer

presses this argument on appeal. The defendant argues only that he had standing under RSA chapter 354-A. We presume that, because this is his sole argument, the defendant premises his $1000 demand to the salon upon the threatened RSA chapter 354-A action.

■ Among other things, RSA chapter 354-A prohibits unlawful discriminatory practices in a place of public accommodation, RSA 354-A:17, and permits only persons "aggrieved," RSA 354-A:21, I(a) (2009); RSA 354-A:21-a, I (2009), to complain of discriminatory practices. In the abstract, the word "aggrieved" may leave room for advocacy regarding its intended meaning, but no reasonable attorney would construe the term in a vacuum. The defendant, who lacked a client and did not personally patronize the salon, could not reasonably conclude that he was "aggrieved" by virtue of his general interest in ending sex discrimination and its distressing effect upon him.

■ The State Commission for Human Rights presumes that all participants in RSA chapter 354-A proceedings have direct interests. *See* N.H. ADMIN. RULES, Hum 311.01(a) (permitting intervention only by "person or entity, other than a party, *having a direct interest* in the outcome of the public adjudicative hearing" (emphasis added)). Furthermore, we have never construed "aggrieved" to confer standing in the absence of a direct and particularized interest. *See Babiarz v. Town of Grafton*, 155 N.H. 757, 760 (2007) (holding, in construing RSA 669:35 (2008) (amended 2008), that a "person aggrieved" by a ruling of the board of recount has "an interest [in the election] which is special or superior to that of a mere voter or member of the public" (quotation and brackets omitted)); *Goldstein v. Town of Bedford*, 154 N.H. 393, 395 (2006) (holding, in the context of a zoning board appeal pursuant to RSA 676:5, I, that to be a "person aggrieved" a petitioner must demonstrate "some direct definite interest in the outcome of the proceedings," and, further, that we will not extend standing to "all persons in the community who might feel that they are hurt by a local administrator's decision" (quotations omitted)).

■ If any doubt remained about the meaning of "aggrieved," it is resolved after reviewing the monetary remedies available to an "aggrieved" person. If an "unlawful discriminatory practice" is found in a public accommodation action brought before the commission, the claimant may receive, within the discretion of the commission, only "compensatory damages." RSA 354-A:21, II(d) (2009); *see* BLACK'S LAW DICTIONARY 416 (8th ed. 2004) (defining compensatory damages as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered"); *see, e.g., Smith v. Cote*, 128 N.H. 231, 243 (1986). Furthermore, the defendant's

threat to seek punitive damages, a remedy unavailable in this state absent statutory authorization, RSA 507:16 (1997), is entirely baseless because RSA chapter 354-A authorizes only the assessment of an "administrative fine" and that fine is payable only to "the general fund." RSA 354-A:21, II(d). Even in an action removed to superior court, the statute authorizes only "damages and relief which could have been awarded by the commission, except that in lieu of an administrative fine, enhanced *compensatory* damages may be awarded." RSA 354-A:21-a, I (emphasis added). Enhanced compensatory damages are, as their name indicates, compensatory and not punitive in nature. *See Vratsenes v. N. H. Auto, Inc.*, 112 N.H. 71, 73 (1972). Thus, by incorporating the idea of compensation into each monetary remedy payable to the public accommodation claimant, the legislature quite clearly contemplated that such claimants will have suffered direct harm.

■ We respectfully disagree with the dissent's conclusion that the defendant had a good faith basis to argue for standing under RSA chapter 354-A. *See Kukene v. Genualdo*, 145 N.H. 1, 3 (2000) ("A frivolous claim lacks . . . any reasonable claim in the law as it is, or as it might arguably be held to be." (quotation omitted)). A review of *Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707 (1980), shows that it does not establish a "substantial possibility," RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110 comment *d* at 172 (2000), that a tribunal would accept the contention that a claimant may bring an RSA chapter 354-A public accommodation action for damages without having suffered the slightest direct harm.

*Scarborough* centered upon an employment dispute and the defendant-employer's challenged misconduct was directly applied to the plaintiff. We looked to the Supreme Court's decision in *Teamsters v. United States*, 431 U.S. 324, 358 (1977), and rejected the contention that a plaintiff failed to establish a *prima facie* showing of employment discrimination. *Scarborough*, 120 N.H. at 710. We said that, in order to prove a violation of RSA 354-A:8, I (current version at RSA 354-A:7, I (2009)), a plaintiff need not give the defendant the opportunity to reject her because she could demonstrate a violation by showing a "failure to fairly consider her because of her sex." *Id.* "A charge that an employer failed to give equal consideration to an applicant would never require the applicant to wait until she is formally rejected because the offense is complete before that time." *Id.* at 711.

■ Unlike the plaintiff in *Scarborough* who actually contacted the defendant employer and attended a job interview, *Scarborough v. Arnold*, 117 N.H. 803, 805 (1977), the defendant here had no preexisting relationship with the salon before threatening litigation and, furthermore, he

suffered no direct, compensable harm. Neither is there here, as there was in *Scarborough*, federal or other persuasive authority supporting such a remarkable extension of the compensatory monetary remedies within RSA chapter 354-A. While the defendant pointed at trial to Massachusetts' "identical" public accommodation law, its monetary remedies, unlike RSA chapter 354-A, include punitive damages. *See* MASS. GEN. LAWS ANN. ch. 151B, § 9 (West 2004). Furthermore, it is well established that "[t]o qualify as a 'person aggrieved,' a person must allege substantial injury as the direct result of the action complained of." *Mass. Elec. v. Mass. Com'n Against Discrim.*, 375 N.E.2d 1192, 1204 (Mass. 1978) (construing public accommodation administrative remedy within Mass. Gen. Laws Ann. ch. 151B, § 5 (West 2004)).

Turning to the circumstances of this case, we conclude that RSA 637:5, II(i) applies to the defendant's conduct. It is apparent that the defendant, acting as an attorney, sent a letter to the salon demanding money and threatening to file a lawsuit if it did not pay him. The defendant did not have a client who had suffered from the alleged discriminatory pricing at the salon, nor had he been a client of the salon himself. In fact, the money the defendant demanded, and eventually received, was for his own personal gain. For the reasons set forth more fully above, we fail to see how the threatened action would have substantially benefited the defendant. As the State aptly explains, it was the defendant's "threat to bring an action which . . . as an attorney [he] knew he could not pursue, coupled with his demand for a cash payment to which he was not legally entitled, that makes the defendant's conduct criminal." We, therefore, conclude that the trial court did not err in denying the defendant's motion to dismiss.

*III. Constitutionality of RSA 637:5, II(i)*

The defendant next argues that, even if RSA 637:5, II(i) prohibits his conduct, we must vacate his conviction because the statute is unconstitutionally vague on its face and as applied to him under both the United States and New Hampshire Constitutions. In addition, the defendant argues that RSA 637:5, II(i) is unconstitutionally overbroad, both on its face and as applied.

We review questions of constitutional law *de novo*. *State v. MacElman*, 154 N.H. 304, 307 (2006). We first address the defendant's claims under the State Constitution, and cite federal opinions for guidance only. *Id.* In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. *State v. Gubitosi*, 157

N.H. 720, 727 (2008). In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution. *Id.*

### A. Vagueness

"Where a defendant's vagueness claim does not involve a fundamental right, a facial attack on the challenged statutory scheme is unwarranted." *MacElman*, 154 N.H. at 307. Here, the defendant argues that his claim involves fundamental rights because the statute implicates his rights to free speech and access to the courts under Part I, Articles 14 and 22 of the New Hampshire Constitution and the First Amendment to the United States Constitution. We assume, without deciding, that the defendant has articulated a fundamental or First Amendment challenge. We will therefore first review his facial challenge, and then consider his as-applied challenge. *See id.*

A statute can be impermissibly vague for either of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. *Id.* "A statute is not unconstitutionally vague as long as its prohibitions are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *State v. Lamarche*, 157 N.H. 337, 340 (2008) (quotation omitted). "In addition, mathematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision." *MacElman*, 154 N.H. at 307 (quotation and brackets omitted). A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality. *Id.*

The defendant argues that RSA 637:5, II(i) is void on its face because the phrase "substantially benefit" is vague. Specifically, the defendant notes that the statute does not specify a required mental state or attach an objective measure in defining that phrase. He further notes that the phrase is not of the type that needs to be expressed in general terms. He argues it is the "absence of all of these saving characteristics" that makes RSA 637:5, II(i) vague on its face.

We conclude that RSA 637:5, II(i) provides a person of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits. It is well established that the necessary specificity required to uphold a statute "need not be contained in the statute itself, but rather, in the context of related statutes, prior decisions, or generally accepted usage." *State v. Porelle*, 149 N.H. 420, 423 (2003) (quotation omitted). Here, read in

the context of generally accepted usage, the phrase "substantially benefit" is plain, unambiguous, and easily understandable. The term "substantial" is defined as "something having substance or actual existence . . . : something having good substance or actual value." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (unabridged ed. 2002). WEBSTER'S defines "benefit" as "to be useful or profitable . . . : become protected, aided, or advanced." *Id.* at 204. Taken together, the terms give clear notice to a person of ordinary intelligence that the statute prohibits a threat that would not provide him or her with some *actual* advantage that is real and definite.

Moreover, although "a scienter requirement in a statute ameliorates" a vagueness concern, *MacElman*, 154 N.H. at 308, the lack of such a requirement does not necessitate invalidating the statute as unconstitutionally vague. The defendant argues that the legislature could have provided an illustrative list to help demonstrate the type of interests encompassed in "benefit," or at least used a more specific phrase than "substantially benefit." A law is not invalid, however, merely because it could have been drafted with greater precision. *Id.* at 307. We conclude that the phrase "substantially benefit" is sufficiently clear, and it therefore is not unconstitutionally vague on its face.

Turning to the defendant's as-applied challenge, we conclude that the statute provided him with a reasonable opportunity to know that his conduct was proscribed by the statute. *See Porelle*, 149 N.H. at 424. The defendant asserts that it fails to give adequate notice that a threat to sue falls within the scope of extortion, arguing that the "disagreement [among courts] . . . evidences an ambiguity" in the statute as to whether it would apply under these circumstances. We find this argument unavailing. The plain language of the statute makes clear that it applies to a threat to "[d]o *any* act which would not in itself substantially benefit him but which would harm substantially" another person. RSA 637:5, II(i) (emphasis added). Thus, the statute neither explicitly, nor by implication, excludes a baseless threat to sue. The defendant also argues that the statute failed to provide him with adequate notice that his antipathy towards gender discrimination was insufficient to satisfy the "substantially benefit" requirement. For the reasons set forth more fully above, we find this argument equally unavailing. Reading the statute as a whole, the defendant had a reasonable opportunity to know that the term "benefit" would require, at the very least, standing to bring the threatened suit. Further, the defendant was not a client of the salon, nor did he represent one. Thus, he had not sustained even a nominal injury as a result of the salon's alleged discrimination to

support his claim. We conclude that a person of ordinary intelligence would understand that RSA 637:5, II(i) applies to his conduct, and reject his as-applied claim.

Because the defendant does not argue that the statute may be subject to arbitrary enforcement, we do not address it. *Cf. Lamarche*, 157 N.H. at 340. Further, because the Federal Constitution offers no greater protection than does the State Constitution under these circumstances, *compare Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007), *with MacElman*, 154 N.H. at 307, we reach the same result under the Federal Constitution as we do under the State Constitution.

### B. Overbreadth

■■ ■■ "The purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." *Gubitosi*, 157 N.H. at 726-27 (quotation omitted). In other words, "[a] statute is void for overbreadth if it attempts to control conduct by means which invade areas of protected freedom." *MacElman*, 154 N.H. at 310 (quotation omitted). "While the Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere, the application of the overbreadth doctrine is strong medicine to be employed only as a last resort." *Gubitosi*, 157 N.H. at 727 (quotation omitted)

> If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications. If, on the other hand, a statute is not substantially overbroad, then whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

*Id.* at 727 (quotation omitted).

The defendant argues that RSA 637:5, II(i) is overbroad as it applies to him because his conduct is constitutionally protected. Specifically, the defendant argues that RSA 637:5, II(i) infringes upon both his freedom of speech, *see* U.S. CONST. amend. I; N.H. CONST. pt. I, art. 22, and his right to petition the government for redress of his grievances, *see* U.S. CONST. amend. I; N.H. CONST. pt. I, arts. 14, 32. He further argues that his prosecution under RSA 637:5, II(i) is not permissible as a reasonable time, place and manner restriction. We first address the defendant's arguments

under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

 The defendant's arguments can be collectively disposed of by simply recognizing that, although we have never addressed this issue, we are not inclined to find the defendant's action protected under the State Constitution. It is well established that the First Amendment does not immunize a person's pursuit of baseless litigation. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983); *Wolfe v. George*, 385 F. Supp. 2d 1004, 1010 (N.D. Cal. 2005), *aff'd*, 486 F.3d 1120 (9th Cir. 2007); *People v. Richardson*, 181 P.3d 340, 345 (Colo. Ct. App.), *cert. denied*, 2008 WL 1850965 (Colo. 2008). The United States Supreme Court has noted:

> The first amendment interests involved in private litigation — compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts — are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition.

*Bill Johnson's Restaurants*, 461 U.S. at 743 (quotation omitted).

 Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993). As discussed, the defendant could not have realistically expected success on the merits of the threatened suit where he had neither standing nor a good faith argument to pursue the threatened claim.

Not only was the threatened litigation objectively baseless, but in threatening such litigation the defendant was motivated by an "unlawful purpose." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 531 (2002). The jury concluded that the defendant "obtain[ed] or exercise[d] control over the property of another by extortion and with a purpose to deprive him thereof," RSA 637:5, I, where he sought out the salon; sent a demand letter identifying himself as an attorney and threatening baseless litigation; and ultimately used the threat as leverage to obtain a settlement for his personal gain. *Cf.* R. ROTUNDA & J. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 20.54(e)(ii), at 632-33 (4th ed. 2008) ("The line between protected and unprotected litigation is crossed when the party's purpose is not to win a favorable judgment against a competitor but to harass him, and deter others, by the process itself — regardless of outcome — of litigating."). The insidious nature of these

circumstances distinguishes the defendant's threat to institute suit from the typical, valid demand letter and removes the constitutional protection it otherwise would have enjoyed.

Because application of RSA 637:5, II(i) to the defendant's actions does not impermissibly infringe upon activity protected by the State Constitution, we conclude that such application is not unconstitutionally overbroad. Thus, we do not reach the defendant's argument concerning whether his prosecution constitutes a reasonable time, place and manner restriction upon protected speech. Because the Federal Constitution offers the defendant no greater protection, *see Bill Johnson's Restaurants*, 461 U.S. at 743, we reach the same result under the Federal Constitution.

The defendant next argues RSA 637:5, II(i) is unconstitutionally broad on its face. We first address the defendant's arguments under the State Constitution, and cite federal opinions for guidance only. *Ball*, 124 N.H. at 231-33. The defendant argues that RSA 637:5, II(i) is facially overbroad because it could cover several otherwise legitimate scenarios, such as an expert who threatens not to testify until his fee is paid, or a consumer who threatens to complain to the Better Business Bureau if he does not receive a refund for a defective product. The defendant asserts that, under either scenario, the prospective defendant is not benefited by the threatened act, but substantial harm could be caused to the person threatened, thus falling within the scope of RSA 637:5, II(i). We disagree.

RSA 637:5, II(i) is a catch-all definition of extortion following eight particularized examples of the crime. The lack of particularization in RSA 637:5, II(i) does not sweep all conceivable fact-scenarios within its proscription, but only the same type as the enumerated acts. *See State v. Sideris*, 157 N.H. 258, 262 (2008) (construing CPA). The common thread between the eight particularized examples, as we recognized in *O'Flynn*, is the "*unlawful* acquisition[] of property by means of threats." *O'Flynn*, 126 N.H. at 709 (emphasis added). Similarly, in *United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) (reversing), *reh'g granted*, 196 F.3d 383 (1999) (affirming on basis of harmless error), *cert. denied*, 530 U.S. 1267 (2000), the Second Circuit concluded that the term "extort," although undefined within 18 U.S.C. § 875(d) (2000), nevertheless proscribed acts within "the traditional concept of extortion, which includes an element of wrongfulness." *Jackson*, 180 F.3d at 70. This implicit concept of "wrongfulness" was evident, in part, because extortion appeared within other statutes relating to acts such as threats to kidnap. *Id.* at 67.

Simply put, the term "extortion," as illustrated by the eight particular examples and the language within *O'Flynn*, impliedly excludes legitimate claims to property through threats. *See State v. Pauling*, 69 P.3d

331, 336 (Wash.) (adopting limiting construction of certain provisions within extortion statute based upon *Jackson*), *cert. denied*, 540 U.S. 986 (2003). Thus, "whatever overbreadth may exist should be cured through case-by-case analysis." *State v. Brobst*, 151 N.H. 420, 422 (2004) (quotation omitted).

Because the Federal Constitution offers the defendant no greater protection under these circumstances, *compare Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (setting out substantial overbreadth doctrine), *with Brobst*, 151 N.H. at 422-25 (applying substantial overbreadth doctrine under State Constitution), we reach the same result under the Federal Constitution as we do under the State Constitution.

*IV. Jury Instructions*

 The defendant asserts that the trial court inadequately instructed the jury as to the mental state elements of theft by extortion. Specifically, he argues that the court's instruction was flawed in that it "did not require the jury to make a finding as to whether [he] actually knew the [threatened] suit lacked a basis." This issue, however, was not preserved for appeal.

> As a general rule, we will not consider grounds of objections not specified or called to the court's attention at the trial. This requirement, grounded in common sense and judicial economy, affords the trial court an opportunity to correct an error it may have made and is particularly appropriate where an alleged error involves a jury instruction.

*State v. Eldredge*, 135 N.H. 562, 564 (1992) (quotation omitted). Here, the defendant made no objection to the court's jury instruction in this regard. In fact, the jury instruction proposed by the defendant on the elements of the crime charged does not raise the issue of the defendant's knowledge. Therefore, we conclude this issue has not been preserved for appeal, and we decline to address it.

*Affirmed.*

DUGGAN, J., concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. The majority concludes that RSA 637:5, II(b) (2007) is not overbroad as applied to the defendant, Daniel P. Hynes, because it finds that his threatened lawsuit was "objectively baseless." I disagree with this conclusion, and, therefore, respectfully, dissent.

The majority concludes that the threatened suit is objectively baseless because the defendant "could not have realistically expected success on the merits of the threatened suit where he had no standing to pursue it." In my

view, however, the defendant could have realistically believed that he had standing. We have never, before today, articulated that a person must have some definite or special interest in the outcome in order to be an aggrieved person under RSA chapter 354-A (1995 & Supp. 2008). *Cf. State v. Panarello*, 157 N.H. 204, 209-10 (2008) (in plain error context, when this court has never before decided issue, trial court's error could not have been clear or obvious). Further, there is at least some suggestion in our jurisprudence, albeit in the context of employment discrimination, that to bring this type of claim, a person need not actually sustain an injury as a result of a discriminatory practice. *See Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 710-11 (1980). While I agree with the majority that our employment discrimination cases can be distinguished from the instant case, the fact remains that, until today, we have not distinguished them.

Given these two factors, I would conclude that it was not objectively baseless for the defendant to believe he possessed standing to pursue a claim under RSA chapter 354-A. *See also* N.H. R. PROF. CONDUCT 3.1. (lawyer may assert issue when there is good faith argument for extension, modification or reversal of existing law).