Merrimack
No. 2006-283

THE STATE OF NEW HAMPSHIRE

v.

STEVE GUBITOSI

Argued: September 11, 2008
Opinion Issued: October 10, 2008

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* senior assistant attorney general, on the brief and orally), for the State.

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the defendant.

GALWAY, J. The defendant, Steve Gubitosi, was convicted of three counts of harassment, *see* RSA 644:4 (2007), and one count of stalking, *see* RSA 633:3-a (2007), following a jury trial in Superior Court (*McGuire,* J.). On appeal, he contends that the superior court did not have jurisdiction over the matter because the prosecutor was not properly appointed. In addition, he argues that his conviction pursuant to RSA 644:4, I(b) must be reversed because the statute is unconstitutionally overbroad. We affirm.

The jury could have found the following facts from the record. The victim terminated her romantic relationship with the defendant in 2002. Subsequently, the defendant began calling her repeatedly, at varying times of day, including late at night, often leaving messages that the victim considered "progressively more harassing and frightening." The defendant also appeared at the victim's home, uninvited, and in public places where the victim was. Although the victim indicated that she did not wish to have contact with him, the defendant continued these acts. This course of conduct ultimately led to his conviction for stalking in Belknap County, *see State v. Gubitosi,* 152 N.H. 673 (2005), and the convictions at issue here.

Because the defendant had been a police officer in Merrimack County for seventeen years prior to the events in question, and desiring to avoid the appearance of a conflict of interest, the Merrimack County Attorney's Office requested that the Belknap County Attorney's Office prosecute the

matter. Specifically, Deputy Belknap County Attorney Wayne Coull, who had prosecuted the Belknap County charge, was asked to prosecute the Merrimack County charges. Coull filed his appearance shortly thereafter.

Prior to trial, the defendant moved to quash the pending charges, arguing that Coull did not have the authority to prosecute the matter because he had not been properly appointed by the trial court. The Trial Court (*Fitzgerald*, J.) denied the motion. The defendant requested an interlocutory appeal challenging Coull's authority, which was also denied. Following an appeal to this court regarding the admission of certain evidence, *see State v. Gubitosi*, 151 N.H. 764 (2005), trial moved forward with Coull prosecuting. The defendant was ultimately convicted of three counts of harassment and one count of stalking.

Following our decision in *State v. Pierce*, 152 N.H. 790 (2005), in which we held subsection (f) of RSA 644:4, I, unconstitutional, the defendant moved to dismiss two of the harassment informations upon which he had been convicted. The first, 03-S-405, was based upon the provision found unconstitutional in *Pierce*, and was dismissed by the Trial Court (*McGuire*, J.). The second, 03-S-408, was based upon the "coarse language" provision of RSA 644:4, I(b). The trial court denied the motion to dismiss, ruling that RSA 644:4, I(b) was not unconstitutional on its face or as applied.

The defendant raises two issues on appeal. First, he argues that he is entitled to a new trial because Coull was not properly appointed pursuant to RSA 7:33 (Supp. 2007) or RSA 661:9, III (2008). Second, he asserts that RSA 644:4, I(b) is unconstitutionally overbroad. We address each argument in turn.

## I. Authority of Belknap Deputy County Attorney Coull

The defendant argued in his motion to quash that Coull had to be appointed by the trial court under RSA 7:33 in order to prosecute him on the instant charges. The trial court denied the motion as "without basis in law." In his request for interlocutory appeal the defendant argued, in the alternative, that Coull had to be appointed under RSA 661:9, III in order to prosecute him. The trial court again denied the motion. On appeal, the defendant contends that, absent appointment under one of these statutes, Coull was essentially a private citizen engaging in a private prosecution, and, thus, under *State (Premo Complainant) v. Martineau*, 148 N.H. 259 (2002), the trial court was divested of its jurisdiction. We disagree.

Resolution of this issue requires that we interpret RSA 7:33 and RSA 661:9, III. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Gallagher*, 157 N.H. 421, 422-23 (2008). We

first examine the language of the statute, and, where possible, we apply the plain and ordinary meanings to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *State v. Langill,* 157 N.H. 77, 84 (2008). We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Franklin v. Town of Newport,* 151 N.H. 508, 510 (2004). Moreover, we do not consider the words and phrases in isolation, but rather within the context of the statute as a whole. *Grand China v. United Nat'l Ins. Co.,* 156 N.H. 429, 431 (2007).

RSA 7:33 states, in pertinent part:

> There shall be a county attorney for each county, . . . elected biennially by the voters of the county. If the county attorney is absent at any term of court or unable to discharge the duties of the office, the superior court, acting as a body, shall appoint a county attorney, who shall be a member of the New Hampshire bar, for the time being and allow said appointee such compensation for his or her services as set by the county delegation.

The defendant asserts that, due to the perceived conflict of interest and consequent inability to prosecute the case, the Merrimack County Attorney was absent at a term of court, requiring appointment of a replacement by the trial court. The defendant misinterprets the statute.

Read in its entirety, RSA 7:33 concerns the *office* of county attorney, providing that it shall exist in every county, that it shall be an elected position, when that election shall take place, and how the office shall be filled, should it become vacant. To that end, the statute requires that the trial court appoint a county attorney when the elected county attorney is "absent at any term of court or unable to discharge the duties of the office." RSA 7:33. The defendant suggests that an absence is created, and a failure to discharge the duties of office occurs, whenever a county attorney is not able to prosecute a particular case. Focusing upon the legislature's use of the phrase "any term of court," the defendant contends that a term of court could consist of a single trial, and, thus, the Merrimack County Attorney's unavailability in this case constitutes an absence. We disagree.

Read in the context of the statute as a whole, the plain meaning of this language demonstrates an intent to fill the office of county attorney in the event the office becomes vacant, and the county is without a county attorney. Contrary to the defendant's assertion, the legislature's use of the plural "duties" indicates the inability to discharge all duties, not simply a single duty in the prosecution of a single case. Likewise, the term "absent"

is generally understood to mean "not present," *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 6 (unabridged ed. 2002), and suggests something more than a county attorney who is unavailable for one case, but otherwise present in office. The heading of the statute, "Election; Temporary Vacancies," also supports our interpretation. While the title of a statute is not conclusive of its interpretation, it provides significant indication of the legislature's intent in enacting the statute. *See Greenland Conservation Comm'n v. N.H. Wetlands Council*, 154 N.H. 529, 534 (2006). Here, the heading of RSA 7:33 strongly indicates that the legislature intended this statute to apply to actual vacancies in office, rather than instances involving disqualification from a single case.

■ Reading RSA 7:33 in light of the entire statutory scheme further supports our interpretation. Although not addressed by the trial court, it appears that another statute under this chapter, RSA 7:33-g (2002), may apply in the event of a county attorney's disqualification from a particular case. RSA 7:33-g provides:

> The county attorney may appoint, with the approval of the attorney general, special assistant county attorneys to assist with criminal cases when the county attorney believes it expedient to do so. Special assistant county attorneys shall act under the supervision, direction, and control of the county attorney and shall serve without compensation at the pleasure of the county attorney.

The State argues Coull was in fact appointed in this manner. However, we decline to address whether Coull was properly appointed pursuant to RSA 7:33-g, as it was not raised before the trial court. We note only that RSA 7:33-g appears to be better suited to addressing instances where a county attorney has a conflict of interest than RSA 7:33.

The defendant next argues that the trial court was required to appoint Coull under RSA 661:9, III. RSA 661:9, III provides that if a county attorney "becomes temporarily absent or incapacitated, the superior court may, upon application of the county attorney or county commissioners, declare a temporary absence and fill the same for a limited period of time expressed in the appointment." Although the State asserts that this argument is not properly before us, *see State v. Duquette*, 145 N.H. 374, 376 (2000) (issues not raised before the trial court are not preserved for appeal), we will assume, without deciding, that it was properly preserved for our review.

■ Contrary to the defendant's argument, we do not interpret temporary absence or incapacitation to include disqualification based upon a conflict of

interest. The title of chapter 661, "Vacancies Among Public Officers Elected at State Elections," provides significant indication of the legislature's intent in enacting this statute. *See Greenland Conservation Comm'n*, 154 N.H. at 534. As was the case with RSA 7:33, the legislature's use of the term "vacancy" in the title of this chapter strongly indicates that RSA 661:9, III was intended to apply when the office of county attorney becomes wholly unoccupied, rather than when a county attorney is unable to prosecute a single case.

■ While the better practice may be a more formalized appointment process than the one followed in this case when a perceived conflict of interest arises, we conclude that disqualification from a particular case does not create the type of vacancy contemplated under either RSA 7:33 or RSA 661:9, III. The trial court was therefore not required to appoint a county attorney under the circumstances of this case. Because we uphold the trial court's decision under the aforementioned statutes, we decline to address the defendant's jurisdictional argument under *Martineau*.

*II. Constitutionality of RSA 644:4, I(b)*

RSA 644:4, I(b) provides:

> A person is guilty of a misdemeanor, and subject to prosecution in the jurisdiction where the communication originated or was received, if such person:
>
> . . . .
>
> (b) Makes repeated communications at extremely inconvenient hours or in offensively coarse language with a purpose to annoy or alarm another.

The defendant asserts that, like subsections (a) and (f), subsection (b) of this statute is unconstitutionally overbroad because it potentially criminalizes legitimate conduct. *See State v. Brobst*, 151 N.H. 420 (2004); *State v. Pierce*, 152 N.H. 790 (2005). The defendant argues that, under *Brobst*, the statute must prohibit communications both at extremely inconvenient hours and using offensively coarse language in order to be sufficiently narrow. We disagree.

■ Our overbreadth law is well-defined:

> The purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to

protected expression. While the Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere, the application of the overbreadth doctrine is strong medicine to be employed only as a last resort. Thus, it remains a matter of no little difficulty to determine when a law may properly be held void on its face and when such summary action is inappropriate.

. . . .

If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications. If, on the other hand, a statute is not substantially overbroad, then whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

*State v. Theriault*, 157 N.H. 215, 217-18 (2008) (quotation omitted). Further, in reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. *Id.* at 218. "In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." *Id.* (quotation omitted).

In *Brobst*, we held subsection (a) of RSA 644:4, I, unconstitutionally overbroad because the statute "covers a substantial amount of protected First Amendment speech, and . . . there exists a real likelihood that it may discourage citizens from exercising that speech." *Brobst*, 151 N.H. at 425. At that time, subsection (a) provided that a person is guilty of a misdemeanor if such person "[m]akes a telephone call, whether or not a conversation ensues, with a purpose to annoy or alarm another." *Id.* at 421 (quotation omitted). In finding RSA 644:4, I(a) unconstitutional, we concluded:

Certainly the State has a legitimate interest in protecting citizens from the effects of certain types of annoying or alarming telephone calls, such as the terror caused to an unsuspecting person when he or she answers the telephone, perhaps late at night, to hear nothing but a tirade of threats, curses, and obscenities, or, equally frightening, to hear only heavy breathing or groaning. . . . RSA 644:4, I(a) is not, however, limited in scope to these types of unreasonable, unwelcome and unwarranted activities or intrusions. RSA 644:4, I(a) applies to any call made to anyone, anywhere, at any time, whether or not conversation ensues, if the

call is placed merely with the intent to annoy or alarm another, which means that the act constituting the offense is complete when the call is made, regardless of the character of conduct that ensues.

*Id.* at 424 (quotations and citations omitted).

In *Pierce*, we held RSA 644:4, I(f) unconstitutional. Subsection (f) provided that a person is guilty of a misdemeanor if such person, "[w]ith the purpose to annoy or alarm another, having been previously notified that the recipient does not desire further communication, communicates with such person, when the communication is not for a lawful purpose or constitutionally protected." *Pierce*, 152 N.H. at 791 (quotation omitted). We concluded that "[w]hile the 'previous notification' requirement limits slightly the breadth of RSA 644:4, I(f), it is not enough to render the statute constitutional." *Id.* at 793.

■ RSA 644:4, I(b) is distinguishable from the subsections found unconstitutional in *Brobst* and *Pierce*. RSA 644:4, I(b) requires repeated communications that either occur at extremely inconvenient hours or contain offensively coarse language. Thus, unlike RSA 644:4, I(a) and (f), RSA 644:4, I(b) does not apply to "any call made to anyone, anywhere, at any time, whether or not conversation ensues." *Brobst*, 151 N.H. at 424. Under subsection (b), it is not just one call that constitutes the offense, but a repeated course of calls. Further, subsection (b) specifically requires communications that consist of "offensively coarse language" or "extremely inconvenient hours." Thus, unlike in *Brobst*, the offense is not complete when the call is made "to anyone, anywhere, at any time." *Id.* In addition, RSA 644:4, I(b) requires that these repeated communications be made with the purpose to annoy or alarm another. With these restrictions, the scope of RSA 644:4, I(b) is narrowly tailored to the illegal communications sought to be prevented.

Furthermore, contrary to the defendant's assertion, *Brobst* does not require that RSA 644:4, I(b) include both the inconvenient hour and offensive language elements in order to pass constitutional muster. *Brobst* simply highlights, in hypothetical fashion, some potential characteristics of communications where the State may have a legitimate interest, *see Brobst*, 151 N.H. at 424, and does not compel their inclusion in RSA 644:4, I(b).

■ For the reasons stated above, we hold that RSA 644:4, I(b) is not unconstitutionally overbroad on its face. Because the defendant has not adequately briefed his argument regarding RSA 644:4, I(b) as applied to him, we do not address it. *See State v. Crie*, 154 N.H. 403, 411 (2006).

*Affirmed.*

Broderick, C.J., and Dalianis, Duggan and Hicks, JJ., concurred.