6th Circuit Court — Concord District Division
No. 2011-830

THE STATE OF NEW HAMPSHIRE

v.

SAMUEL BIONDOLILLO

Argued: September 20, 2012
Opinion Issued: November 28, 2012

*Michael A. Delaney,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief, and *Lisa L. Wolford,* attorney, orally), for the State.

*Law Office of Brandon D. Ross, PLLC,* of Concord (*Brandon D. Ross* on the brief and orally) for the defendant.

HICKS, J. The defendant, Samuel Biondolillo, appeals his conviction, following a bench trial in the 6th Circuit Court — Concord District Division (*Spath,* J.), of disorderly conduct, *see* RSA 644:2, II(e) (2007). He argues: (1) that his conviction violates his constitutional right to free speech; (2) that the evidence is insufficient to sustain his conviction; and (3) that, for several reasons, the trial court committed plain error. We affirm.

I

The trial court could have found the following facts. On June 28, 2011, Concord Police Officer Garcia responded to a report that a man and a woman in a McDonald's restaurant were not attending to the needs of their child. He approached the couple to determine whether they were capable of caring for their child, but was interrupted by the defendant, who was sitting nearby. The defendant advised the couple not to talk to Garcia, stating, among other things, that "the police ruin peoples' lives." After Garcia attempted to explain to the defendant the purpose of his visit, the woman took the child to the bathroom and Garcia asked the man to step outside to discuss the matter without interruption from the defendant. While outside, Garcia learned from a dispatcher that there was an outstanding bench warrant for the woman, meaning Garcia would need to take her into custody.

After speaking with the man for a short time to determine whether he could care for the child alone, Garcia saw the defendant leave the restaurant. Officer Kayla Buffis arrived and brought the woman outside. The defendant then approached to within an arm's length of the group and interrupted their conversation, asking the man whether he was okay, whether he wanted an attorney, and whether he wanted the interaction recorded. Garcia told the defendant he needed to back away and stop interfering with the investigation, but the defendant did not do so. After the defendant refused to leave despite having been told to do so several times,

Garcia arrested him. The State charged him with obstructing government administration and disorderly conduct. The trial court found him not guilty of the former charge, but guilty of the latter.

## II

The defendant first argues that his disorderly conduct conviction violates his right to free speech under Part I, Article 22 of the New Hampshire Constitution and the First Amendment of its federal counterpart. This argument presents a question of constitutional law, which we review *de novo*. *State v. Marshall*, 162 N.H. 657, 661 (2011). We first address the defendant's claims under the State Constitution, and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ The State and Federal Constitutions contain robust guarantees of free speech, but they do not offer absolute protection to all speech under all circumstances and in all places. *See, e.g., Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *State v. Comley*, 130 N.H. 688, 691 (1988). The right of free speech under the State Constitution

> may be subject to reasonable time, place and manner regulations that are content-neutral, narrowly serve a significant governmental interest, and allow other opportunities for expression. Even where a law regulates conduct generally, without addressing speech in particular, it nonetheless may effect an incidental regulation of speech that, like direct regulation, is constitutionally permissible if it does not exceed the bounds of the limited, content-neutral time, place and manner standard.

*Comley*, 130 N.H. at 691 (citations omitted). Federal precedent employs the same standard to assess the constitutionality of restrictions on the time, place, and manner of expressive activities taking place in a public forum. *See Clark*, 468 U.S. at 293 (Reasonable time, place, and manner restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.").

RSA 644:2, II(e), the statute under which the defendant was convicted, provides that a person is guilty of disorderly conduct if he "[k]nowingly refuses to comply with a lawful order of a peace officer to move from or remain away from any public place." A "[l]awful order" under this statute means "[a] command issued to any person for the purpose of preventing said person from committing any offense set forth in this section . . . when the officer has reasonable grounds to believe that said person is about to

commit any such offense, or when said person is engaged in a course of conduct which makes his commission of such an offense imminent." RSA 644:2, V(a)(1) (2007). Here, the State contends that the defendant engaged in a course of conduct which made his commission of another variant of disorderly conduct imminent — "[e]ngaging in conduct in a public place which substantially interferes with a criminal investigation." RSA 644:2, II(d) (2007). The defendant appears to contend that RSA 644:2, II(e) is unconstitutional both on its face and as applied to him; accordingly, we address each contention in turn.

## A

■ We are not persuaded that RSA 644:2, II(e) is constitutionally deficient on its face. Our decision in *Comley* is instructive. The defendant in that case interrupted the inauguration ceremony of Governor John Sununu by shouting remarks about the Seabrook nuclear power plant. *Comley*, 130 N.H. at 689-90. He was charged with the statutory variant declaring that a person is guilty of disorderly conduct if he "purposely causes a breach of the peace, public inconvenience, annoyance or alarm ... by ... [d]isrupting the orderly conduct of business in any public or government facility." *Id.* at 691 (quotation omitted); *see* RSA 644:2, III(b) (2007). We rejected his State constitutional challenge, reasoning that, although the statute "may have [the effect of regulating speech] where a prosecution under [it] concerns conduct encompassing expressive activity," it "prohibits only that speech whose exercise, as distinct from its contents, interferes with the government's interest in preserving order in its business." *Id.*

■ As in *Comley*, RSA 644:2, II(e) does not specifically regulate speech, although "its application obviously may have such an effect where a prosecution under [it] concerns conduct encompassing expressive activity." *Id.* Its plain terms, however, satisfy *Comley*'s three-part test. It does not target speech for its content, but rather aims only at persons who refuse to comply with an official command when that command is based upon an officer's objectively reasonable belief that the person either (1) is "about to" commit an offense, or (2) is engaged in a course of conduct that makes an offense "imminent." RSA 644:2, V(a)(1). The statute is also narrowly tailored to the State's strong interest in safeguarding a police officer's ability to pursue legitimate investigations "free from possible interference or interruption by bystanders." *Colten v. Kentucky*, 407 U.S. 104, 109 (1972). Although, as he asserts in his brief, the defendant may have a constitutional right to "criticize and observe police conduct," he has no parallel right to engage an officer or others in conversation at a time and in a manner that causes — or may imminently cause — a substantial interference in the officer's duties during the course of a criminal investi-

gation. *See id.*; *see also* RSA 644:2, II(d). Finally, the statute leaves open ample channels of expression; namely, situations in which a person is not interfering or about to interfere with a criminal investigation.

■ The defendant relies upon *Houston v. Hill* for the proposition that "interrupting" the police may not be criminalized. *See Houston v. Hill*, 482 U.S. 451 (1987). *Hill*, however, addressed a city ordinance whose "enforceable portion . . . deal[t] not with core criminal conduct, but with speech." *Id.* at 460. The ordinance made it "unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 461 (quotation omitted). The Court struck down the provision on the grounds that the Constitution does not allow the government to make "verbal interruptions" of police officers a crime. *Id.* at 461, 463. In contrast, RSA 644:2, II(e) criminalizes the refusal to comply with a police officer's lawful order to "move from or remain away from" a public area when it is reasonable to believe a person is about to commit an offense, regardless of whether the subject of the lawful order was engaged in expressive activity. This provision triggers none of the constitutional infirmities identified in *Hill*, such as giving the police "unfettered discretion to arrest individuals for words or conduct that annoy or offend them," *id.* at 465, or threatening the "freedom of individuals verbally to oppose or challenge police action," *id.* at 462-63. Indeed, the Court in *Hill* noted that "a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order" would be constitutional, even if it were applied to a person who persistently engaged a police officer in conversation while the officer directed traffic at a busy intersection. *Id.* at 463 n.11. RSA 644:2, II(e) is similarly tailored to advance only the legitimate, content-neutral goal of allowing police officials to disperse those on the brink of engaging in unlawful conduct. *Cf. Colten*, 407 U.S. at 111 (upholding disorderly conduct statute in part because it "comes into operation only when the individual's interest in expression . . . is 'miniscule' compared to a particular public interest in preventing that expression or conduct at that time and place). Therefore, it survives facial scrutiny.

B

Neither is the statute unconstitutional as applied to the defendant. In *Colten*, the Supreme Court upheld the application of a similar statute in circumstances analogous to those of this case. *Id.* at 109. In that case, the defendant was arrested and charged with disorderly conduct after refusing to comply with an officer's command to leave the scene of a traffic stop. *Id.* at 106-07. The defendant maintained that he had been attempting to arrange transportation for the driver of a vehicle that was to be towed away, and was asked by the police at least three times to move along. *Id.* at

107. The statute made it unlawful to "[c]ongregate[] with other persons in a public place and refuse[] to comply with a lawful order of the police to disperse" if done "with intent to cause public inconvenience, annoyance or alarm." *Id.* at 108 (quotation omitted). The Court rejected the defendant's as-applied First Amendment challenge on the grounds that the defendant "had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time." *Id.* at 109.

■ Here, too, the defendant was not engaged in constitutionally-protected conduct when he refused to leave the vicinity of Officer Garcia's investigation. After having first interrupted the conversation between Garcia and the couple inside the restaurant, the defendant approached to within "arm's distance" of Garcia outside the restaurant and attempted to engage in a discussion with the man. It was not the content of the defendant's speech that caused Officer Garcia to arrest him. Rather, it was the fact that he was interfering with the performance of Garcia's duties as a law enforcement officer and subsequently refused Garcia's lawful command aimed at preventing further interference. Garcia was entitled, if not obligated, under the circumstances, to pursue the goal of ensuring that the man was capable of caring for the child "free from possible interference or interruption from bystanders" such as the defendant. *Id.* Thus, we perceive no basis for finding RSA 644:2, II(e) unconstitutional as applied to the defendant.

Because the Federal Constitution offers the defendant no greater protection than the State Constitution in these circumstances, *see Comley*, 130 N.H. at 692; *Colten*, 407 U.S. at 111, we reach the same conclusion under a federal analysis.

## III

■ The defendant next argues that the evidence was insufficient to convict him of disorderly conduct under the statute. To prevail, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Wilmot*, 163 N.H. 148, 154 (2012).

As noted, a person is guilty of disorderly conduct under RSA 644:2, II(e) if he "[k]nowingly refuses to comply with a lawful order of a peace officer to move from or remain away from any public place." A "[l]awful order" under this statute means "[a] command issued to any person for the purpose of preventing said person from committing any offense set forth in this section . . . when the officer has reasonable grounds to believe that said person is about to commit any such offense, or when said person is engaged

in a course of conduct which makes his commission of such an offense imminent." RSA 644:2, V(a)(1). The State argues that Officer Garcia had reasonable grounds to believe the defendant was engaged in a course of conduct that made imminent his commission of another variant of disorderly conduct: "[e]ngag[ing] in conduct in a public place which substantially interferes with a criminal investigation." RSA 644:2, II(d). The defendant, on the other hand, argues that the State offered no evidence Garcia was performing a criminal investigation, and accordingly no rational trier of fact could have convicted him on this basis.

■ The evidence presented is sufficient to sustain the defendant's conviction. As is clear from the testimony of Officers Garcia and Buffis, the defendant's conduct outside the restaurant demonstrated a design not simply to voice his concern to the man about speaking with police, but to inject himself into their investigation and interfere with Garcia's efforts to complete his inquiry into the safety of the child. Not only had the defendant already expressed his opinion to the father inside the restaurant that "the police ruin people's lives," but he also came within "arm's distance" of Garcia outside the restaurant and interrupted Garcia's attempt to ascertain whether the father was capable of caring for the child. Even assuming that this evidence did not, on its own, establish that the defendant "substantially interfere[d]" with the officers' investigation, RSA 644:2, II(d), a rational trier of fact could have concluded that the defendant's "course of conduct" made a substantial interference imminent, RSA 644:2, V(a)(1). Accordingly, Officer Garcia's command to the defendant to leave the area was a lawful order and the defendant's refusal to comply constituted disorderly conduct under RSA 644:2, II(e).

Nor are we persuaded by the defendant's argument that the State offered insufficient evidence that a "criminal investigation," RSA 644:2, II(d), was underway. While it is true that Officer Garcia initially went to the restaurant to follow up on a telephone call reporting a general concern about a child's welfare, the nature of such an investigation will often call upon the police to ascertain whether the child's caretaker is endangering the child's welfare, *see* RSA 639:3 (2007), or otherwise harming the child. Indeed, Officer Garcia testified that he had previously observed the same parents cross a heavily-traveled road pushing a baby carriage with apparent disregard for traffic, suggesting a caretaking issue. Moreover, by the time the defendant injected himself into the investigation outside, Officer Garcia had learned from a dispatcher that the mother of the child had an outstanding warrant for her arrest — a fact of obviously criminal import. Under these circumstances, a rational trier of fact could have concluded that the officers were conducting a criminal investigation.

Because we sustain the defendant's conviction for disorderly conduct based upon his refusal to comply with a lawful order, we need not address the parties' arguments as to other statutory variants of the crime.

## IV

■ Finally, the defendant invokes the plain error rule as a basis for reversal, *see* SUP. CT. R. 16-A, an argument that appears to rest, at least in part, upon an assertion that the definition of "lawful order" is so vague as to constitute a due process violation as applied to him. For the purposes of the plain error rule, however, an error is plain only if it was or should have been obvious in the sense that the governing law was clearly settled to the contrary. *State v. Ortiz*, 162 N.H. 585, 591 (2011). Although in *State v. Nickerson* we held that a previous version of the disorderly conduct statute was unconstitutional where it was "set in general terms and can conceivably apply to a broad spectrum of . . . situations," *Nickerson*, 120 N.H. 821, 824 (1980) (quotation omitted), the legislature subsequently amended the statute, *see* Laws 1983, 200:1; Laws 2005, 192:2, such that it now includes a specific three-part definition of "[l]awful order." RSA 644:2, V(a). Furthermore, the United States Supreme Court in *Colten* rejected a similar vagueness argument, reasoning that any person seeking "to engage the attention of an officer issuing a summons should understand" that he could be convicted for failing to move on when told to do so. *Colten*, 407 U.S. at 110. Even assuming that certain hypothetical applications of the current statute might pose vagueness concerns, in no sense is the controlling law "settled" against the trial court's decision as applied to the defendant. *Ortiz*, 162 N.H. at 591.

To the extent that the defendant advances other bases for relief under the plain error doctrine, they are insufficiently developed for appellate review. *See Sabinson v. Trustees of Dartmouth College*, 160 N.H. 452, 459 (2010).

*Affirmed.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.